GILES *v.* SCHOOL DISTRICT No. 14 IN SANBORNTON.

A district prudential committee vacates his office by removal from town.

Where there is a prudential committee, duly appointed and qualified, the select-men have no authority to warn a district meeting, and the proceedings of a meeting warned by them will be merely void, unless the committee have neg-lected their duty.

A resignation of the office of prudential committee will not be inferred from failure to perform the duties.

A prudential committee cannot recover of the district the money expended for slight occasional repairs. Such repairs are to be made from the school money assigned to the district.

Whether the prudential committee has a claim upon the school money for expenses properly incurred by him, and to what extent in case of his removal, *quære.*

THIS was an action of assumpsit, to recover the sum of eighty-three cents, charged by the plaintiff for that amount paid for finding and setting two squares of glass in the window, and for finding and putting on a lock on the outside door of the school house of said district, in November, 1852. The sum of twenty-five cents was duly tendered by the defendants for the repairs on the window, and was received by the plaintiff in part.

It was in evidence that in 1851, A. W. Brown was the prudential committee for the district; that he removed from the district in December, 1851. No meeting of the district was holden in March, 1852. In April following, certain legal voters of the district applied to the selectmen, alleging that there was a vacancy in the office of prudential committee, by reason of said Brown's removal from the district, and prayed them to appoint some legal voter in the district a prudential committee. The selectmen thereupon appointed the plaintiff such committee, who duly took the oath of office, and the application, the appointment, and the certificate of the oath, were recorded by the clerk of said district, before the 23d of April.

On the 23d of April, no application for the purpose hav-

ing been made to the plaintiff, an application was duly made to the selectmen to call a meeting of the district, (1) to choose a moderator, clerk and prudential committee, and (2) to see if any and how much money shall be expended for a summer school, and when that school should commence.

The selectmen called a meeting of the district in the usual mode, on the 5th day of May, 1852, at which meeting the plaintiff was present, and was chosen prudential committee, and was asked to take the oath of office, which he declined to do, protesting that he had taken it once, and that he was the committee.

The meeting then chose J. H. Johnson prudential committee, and he took the oath of office, the plaintiff neither assenting nor objecting. The meeting voted to have a summer school, if said Johnson's daughter could be procured to teach it. She kept the school in the district six weeks in that summer, by employment of her father, who acted as prudential committee in employing her, and in taking care of the school house during the summer, the plaintiff neither objecting nor interfering.

In the fall the plaintiff called on Johnson for the key of the school house, who refused to deliver it to him. The plaintiff then broke from the door a small padlock, which Johnson had put on it, and entered the school house and made the repairs before stated, and put his own daughter into the school house to keep the winter school. Neither the selectmen nor the district have furnished any money to the plaintiff for the use of said district, but have refused to recognize him as the prudential committee.

The defendants contended that the plaintiff was not, but that Johnson was the legal prudential committee, and that if the plaintiff was duly constituted such committee, he resigned the office previous to his making the repairs; and to show this fact they relied upon his conduct at the district

meeting in May, 1852, and during the summer, as before stated.

The defendants further contended that if the plaintiff was the prudential committee, he had no authority to make such repairs at the expense and on the credit of the district.

A verdict was taken by consent for the plaintiff, subject to be set aside, and judgment entered for the defendants, as the superior court might deem just and proper, upon the foregoing facts.

*H. A. Bellows,* (with him *Colby,*) for the defendants.

The provision of the law, that there shall be an annual meeting in the month of March, in each district, does not necessarily imply that the officers shall be chosen at no other time. Chapter 74, section 7, of the Compiled Statutes, provides that the officers shall hold until the next annual meeting, but in providing that, in case of vacancy, select-men may appoint a prudential committee, it merely provides that such committee shall hold his office until a new one is legally chosen and qualified, not until the next annual meeting, as in the other case, giving some ground for the position that a new officer might be chosen after March. *Merrill* v. *Sylvester,* 1 Greenl. 248.

The neglect of the plaintiff to discharge the duties of the office until November, more than six months from the election of Johnson, together with his permitting Johnson, without objection, to act as prudential committee during that time, amounted to a resignation of his office. *Johnson* v. *Wilson,* 2 N. H. Rep. 202; *Merrill* v. *Sylvester,* 1 Greenl. 248; *Van Arsdale* v. *Hazard,* 3 Hill 243.

The plaintiff could not make the repairs at the expense of the district, or on their credit. His authority is derived solely from the statutes, (Comp. Stat. ch. 74, § 12; and ch. 76, § 3,) which authorize him to employ teachers, provide board, and make occasional repairs, not exceeding five per cent. of the school money, and appropriate the share of the

district accordingly. In *Stebbins* v. *School District in Columbia,* it was held that the district is not liable for the wages of the master. The district has no power to raise money for schools. So his power to employ teachers, provide board and fuel, and make repairs, all came from the same source, and the funds are all derived from the town. Consequently, the district is not liable for the wages of the teacher, and it cannot be for repairs. See *Staples* v. *French,* 10 N. H. Rep. 72.

*J. Bell,* (with *E. A. Hibbard,*) for the plaintiff.

I. The seventh and eleventh sections of chapter 74 of the Compiled Statutes are intended merely to provide that the prudential committee may hold over, after the time for holding the annual meeting in March, if no successor be then appointed.

II. The claim of Johnson was void, as the selectmen had no authority to call the meeting at which he was chosen, there having been no neglect or refusal on the part of Giles to call a meeting. See §§ 2, 3, ch. 74 of the Compiled Statutes. Giles was appointed and sworn in March, and this meeting was called upon an application dated April 23d, and there is not the slightest evidence of anything done or omitted by him before that time, which could be construed as a resignation of his office.

At the meeting he merely declined to accept a void appointment to an office which he already held under a legal appointment. The evidence was not competent even to show a subsequent resignation. He did not assent to Johnson's employing a teacher, though he may not have thought it necessary to interfere with what was in reality only a private school; and when in his judgment the proper time had arrived, he caused a district school to be kept in the house.

III. It is made, by the statute, the duty of the prudential committee to employ teachers, make repairs, &c., " for the district." Comp. Stat. ch. 74, § 12. And this he is re-

quired to do " when necessary," and he is not, as we conceive, to wait, when there may be urgent necessity for them, until the selectmen may pay over the school money. He may act upon the credit of the district, as selectmen may upon that of towns, within the limits prescribed by the statute.

The case of *Staples* v. *French*, referred to by the defendant, shows that the plaintiff had no remedy against the selectmen. But the district has such a remedy, in case the money is not paid over by action of debt. See Comp. Stat. p. 175, § 6.

In the present case, as will frequently happen in like cases, the district had a balance of the school money of the preceding year unexpended. They probably, also, had money in the hands of Johnson.

The unreported case of *Stebbins* v. *School District in Columbia*, (which the plaintiff's counsel have had no opportunity of examining,) is not referred to as an authority to the point, that the committee, who have advanced money to pay the master, may not recover it from a district, in an action for money paid and expended for them.

If the plaintiff has not a remedy in this form, and against the district, whose agent he is, he is wholly without remedy.

BELL, J. The office of prudential committee became vacant by the removal of the incumbent from town, in December, 1851. *Barre* v. *Greenwich*, 1 Pick. 129, cited in *Rumsey* v. *Campton*, 10 N. H. Rep. 567. The plaintiff was appointed by the selectmen, and took the oath of office, and his appointment and oath were properly recorded, before the 23d of April, 1852, and no objections are suggested to the regularity of these proceedings. As prudential committee he was authorized " to make such occasional repairs in the school house and furniture as may be necessary, not exceeding in amount five per cent. of the school money of the district." Rev. Stat. ch. 72, § 10.

It is not suggested that the repairs were not occasional, within the meaning of the statute, nor that they were not proper and necessary, if the plaintiff was the prudential committee, and entitled to the care and control of the house. But the defence rests on the ground that the plaintiff being appointed to fill a vacancy, held his office not for a year, or for the residue of the year, as he would do if chosen to the office, but only " until a new officer was chosen and qualified ;" and that he was in fact superseded and removed from office May 5, 1852, some months before these repairs were made, by the election and qualification of another person to the office.

If this objection is well founded it is fatal to the plaintiff's action, but it is said the election of Johnson was void, because the selectmen had no authority to call the meeting at which he was chosen.

The statute, after providing for the calling of annual and special meetings of school districts, Laws of 1845, ch. 222, §§ 1, 2, (Comp. Stat. 169,) provides, section three, that " if the prudential committee shall neglect to warn any such annual meeting, by issuing a warrant and posting up an attested copy thereof, as aforesaid, prior to the fifteenth day of March, or shall neglect for the space of ten days after application made in writing, by three or more voters of the district, to call any such special meeting, the selectmen of the town, upon a like application, shall call such annual or special meeting, by issuing their warrant, and causing a copy thereof, attested by them, to be posted up or served in the manner before subscribed."

The power of the selectmen to call any meeting of a district rests upon this statute, and upon the neglect of the prudential committee in the cases there specified. In this case there was no neglect of duty in March, for there was then no committee ; and as the idea of neglect implies a duty, there was no person who then owed any duty. No application appears ever to have been made to the plaintiff to warn

any meeting, and he was under no obligation of duty to warn any special meeting until application was made to him. The selectmen, of course, assumed to act in a case where the statute gave them no authority. And the warrant, and all the proceedings of the meeting held under it, were consequently void. And the plaintiff was not legally either superseded or removed.

It is, then, contended that the plaintiff had resigned the office of prudential committee, by his conduct at the meeting called by the selectmen, where, upon being chosen prudential committee, he refused to take the oath, and he made no objection to the election of Johnson as committee, nor interfered with his acting as such during the summer. Neither of these things constitute a resignation. At the meeting, he claimed that he was the prudential committee, and had already been sworn, and this cannot reasonably be construed as a surrender of the office. We do not perceive that there was any such call upon him to protest against an unauthorized claim of another committee, or his unauthorized action as such, as to justify the inference that he gave up the office. It is not, we think, consistent with sound policy to give any countenance to implied resignations. The law imposes certain duties on these committees, and subjects them to penalties for neglect of them. These penalties would be entirely nugatory, if the same negligence which subjects the party to these penalties could be construed into a resignation of the office.

The third objection to the plaintiff's recovery, in this case, is, that the occasional repairs, authorized to be made by the prudential committee, are to be made from the school money assigned to the district by the selectmen, and by law payable to the prudential committee; and that the committee have no power to make such repairs upon the general credit of the district, and claim payment of them.

The provision in relation to such repairs was introduced during the passage of the Revised Statutes, and no light

can be drawn from any prior legislation. In terms, it is not said from what fund the money is to be taken, but we are inclined to the opinion that the school money assigned to the district is the only fund to which the committee can resort to defray the expense of repairs.

Taxes voted by the district for repairs of the school house, are evidently designed to be expended by committees special-ly chosen for that purpose. Rev. Stat. ch. 71, § 1. The prudential committee, as such, has no power to interfere with the expenditure, and it has been decided that the power of the building committee is limited to the expenditure of the money raised by the district. They have no power to expend money or incur debts, on the credit of the district, beyond that amount.

There is no provision of any of the statutes which author-izes, in terms, a district to raise money for any other pur-pose than the building and repairing of school houses; and one cannot avoid the conclusion, on reading the statutes, that the meetings of the district to raise money for repairs, and the assessment of taxes for that purpose, was expected to be occasional and infrequent. The liability to small ex-penses for slight repairs of the school house, furniture, and the like, must be of frequent, perhaps annual occurrence. If it had been in the contemplation of the Legislature that the district were liable to contract debts, and to be involved in lawsuits, they could hardly have failed to make provision for such a case.

The school money, required by the general law to be as-sessed by the selectmen every year, and to be apportioned annually and assigned to the several districts, seems to us to be the fund from which all the ordinary expenses of the schools are to be defrayed. It is a fund required to be paid over to the prudential committee, annually, for this purpose. The other expenses of the schools are to be paid from this fund, and, we think, the expense of occasional slight repairs must be so. This seems to us evident from the third sec-

tion of chapter 72 of the Revised Statutes, which provides that " the school tax, when collected, shall be appropriated to the *sole purpose* of keeping an English school, or schools, within such town, for teaching reading, writing, English grammar," &c., " including the purchase of necessary fuel for the school and occasional repairs, as specified in this title." See Rev. Stat. ch. 72, § 10, before cited.

Assuming the correctness of this position, the claim of the prudential committee, for money expended for repairs, stands on the same ground as that for money expended for instructor's wages or for fuel. As to the latter, the question was decided in *Estes* v. *School District*, 33 Maine Rep. (3 Red.) 170, where it was held, under statute provisions similar to ours, that no authority is conferred on school districts to raise money for the purpose of providing fuel, or to contract for the purchase of it, and no action could be maintained against them for the price of fuel furnished by order of the school agent. Perhaps, under our law, the district might be bound to the party with whom such a contract was made, but the principle would apply to the claim of the committee against the district.

We think these payments cannot be made by the committee upon the credit of the district, but must be made upon the credit of the school money apportioned to the district. This money must be raised, and of course paid by the district, as a part of the town at all events, whatever may be the action of the district committee. If the committee may make these payments on the credit of the district, and maintain their action against the district for the recovery of them, it is not seen how the district can avoid being subjected, at the pleasure of the committee, to a double tax. They have no means to avail themselves of the tax assessed for the support of schools, to reimburse themselves the money they have paid on the execution in favor of the prudential committee, and no means to compel the committee to apply the money to this purpose. He is

subjected to a heavy penalty for not applying it to other purposes specified by the law. Rev. Stat. ch. 72, § 6.

The statute provides a remedy for the committee for the recovery of the school money assigned to his district, by an action of debt in the name of the district, against the selectmen who neglect to assign it or pay it over. Rev. Stat. ch. 72, § 5. This action seems to us the appropriate remedy for the committee to obtain possession of the money applicable by law to the expenditures to be made by him, including occasional repairs. Though the suit is to be in the name of the district, and the money recovered is to be for their use, yet the action is the suit of the committee alone, and the district cannot interfere with it, and the fund, when recovered, is to be applied by the committee, as an officer of the law, to the use of the district, in paying teachers and for fuel and repairs.

A remedy being thus expressly provided for the committee to obtain the funds applicable to all proper expenses which can be incurred by him, we cannot believe it could be the intention of the Legislature to subject the district to an action for the recovery of the same sums, especially as such a suit could have no tendency to supersede the necessity of an action against the selectmen, if they refuse to pay. The only effect of such a construction would be to support two actions, when the whole object would be effectually accomplished by one.

Difficulties have been suggested, in case the committee, after incurring expenses for teaching, fuel or repairs, should be removed, or his official term expire before he is able to obtain the school money. How far the fund might be regarded as the property of the committee, or subject to his claim, to the amount of expenses properly incurred by him, need not here be considered. If the expenses were not incurred on the credit of the district, the removal of the officer would not make it liable.

Though we are satisfied the plaintiff was the legal pru-

dential committee of the district, and properly authorized to incur.these expenses, yet he has mistaken his remedy, and must seek his reimbursement-from the school money, either by suit in the name of the district against the selectmen, or otherwise.

There must, therefore, be

*Judgment for the defendants.*